Joseph Sheban and Florence Sheban v. Commissioner.
Sheban v. Commissioner
Docket No. 3713-68.
United States Tax Court
T.C. Memo 1970-163; 1970 Tax Ct. Memo LEXIS 194; 29 T.C.M. (CCH) 727; T.C.M. (RIA) 70163; June 22, 1970, Filed *194 1. During the years in issue, 1964 and 1965, petitioner was in the business of leasing and managing real properties in which he had an interest. Respondent disallowed petitioners' deduction as a business expense under sec. 162(a), [1] or 728 as a loss under sec. 165, of certain traveling expenses incurred in 1965 while investigating and arranging for the purchase of a hotel which was to be converted into a "senior citizen home." Held, these expenses are not deductible under sec. 162(a) because petitioner failed to prove that the expenses were incurred in connection with his existing business; furthermore, that they are not deductible under sec. 165 because no loss occurred in the year in issue. 2. Held, petitioner is not entitled to deduct certain telephone expenses under sec. 162(a) because he failed to prove that they were incurred in carrying on a trade or business. 3. During 1964 and 1965 petitioner used three rooms in his residence for carrying on his business activities, for storing old files and records from former businesses, and for writing books. Held, petitioner did not use the rooms exclusively for business purposes, and therefore is entitled to deduct only a portion of *195 certain amounts paid for cleaning and utilities as an ordinary and necessary business expense under sec. 162(a). 4. Respondent disallowed the deduction under sec. 162(a) of certain advertising expenses which petitioner incurred in 1964 to promote the sale of books that he had written. Held, petitioner established that his writing activities constituted a trade or business conducted for profit. The claimed expense for advertising is allowed as an ordinary and necessary business expense. Joseph Sheban, pro se, 5020 Sheban Dr., Youngstown, Ohio. Frank E. Wrenick, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1964 and 1965 in the amounts of $229.17 and $871.01, respectively. After certain concessions made by respondent at trial, the issues remaining for our decision are as follows: (1) Whether certain traveling expenses related to the attempted establishment of a "senior citizen home" were incurred in carrying on petitioner's business of leasing and managing real properties for the purpose *196 of a deduction under section 162(a), or constituted a deductible loss under section 165. (2) Whether certain telephone expenses are deductible under section 162(a) as ordinary and necessary business expenses. (3) Whether petitioner is entitled to a deduction as a business expense under section 162(a) of all or any portion of certain amounts paid for cleaning and utilities with respect to three rooms in his residence which petitioner used for carrying on his business activities, for storing old files from former businesses, and for writing books. (4) Whether petitioner was in the trade or business of writing books for the purpose of the deduction of certain advertising expenses under section 162(a). Findings of Fact Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioners, Joseph and Florence Sheban, are individuals with their legal residence at 5020 Sheban Drive, Youngstown, Ohio, as of the date the petition herein was filed. Petitioners filed joint income tax returns for the calendar years 1964 and 1965 with the district director of internal revenue, Cleveland, *197 Ohio. Since Florence is a petitioner herein only because she filed joint returns with her husband, Joseph will sometimes hereinafter be referred to as "petitioner." Joseph's primary source of income during the years 1964 and 1965 was a business in which he leased certain real properties located in Youngstown, Ohio, which were either owned by him individually, or owned by a partnership known as the Sheban Mining Company. Joseph and his brother, Karam Sheban, each owned a one-half interest in the partnership. At some time prior to the years in question the partnership abandoned its coal mining operations, and was thereafter solely concerned with the rental of the real properties which it owned. Petitioner realized gross rental income from the following properties owned by him individually in the total amounts of $4,060 in 1964 and $6,032 in 1965: 729 Description
Year Acquired
Cost
House, Cleveland Street
1947
$ 1,500
Improvements
1957
1,427
Apartments, Lakewood & Thorn
1957
34,339
Two Frame Houses, Rayen Ave.
1958
10,000
Frame House and One Store,
Wilson Ave.
1958
4,000
The partnership received gross rental income from the following properties which it owned in the total amounts of $32,899.53 in 1964 and *198 $32,173.22 in 1965: Description
Year Acquired
Cost
Brick Building, 2501 Market
1952
$47,652.22
Brick Building, 5000 Market
1955
43,944.00
Improvements
1959
1,544.02
Brick Building, 2503 Market
1957
87,784.15
Improvements
1958
12,014.94
Improvements
1959
4,571.05
Frame Apartments, 2501 Mar- ket
1948
6,400.00
Frame House, Ellsworth
1951
6,000.00
Frame House, E. LaClede
1953
12,000.00
Frame House, North Lima
1948
5,528.31
Frame House, Parmalee
*
*
Office Building
1953
5,190.69
At some undetermined time in 1964, petitioner became interested in purchasing the Angebilt Hotel of Orlando, Florida, which was the principal asset of the Hotel Holding Company, a Florida corporation. Petitioner's plan was to convert the hotel into a "senior citizen home." On October 1, 1965, petitioner obtained an option to purchase all of the outstanding stock of the Hotel Holding Company for approximately $1,200,000. The terms of the option agreement are not of record. In an effort to obtain financing for this venture, petitioner made trips to several cities, including New York, Chicago, and Pittsburgh. A finance agency in New York told petitioner that *199 it would probably be able to arrange for the requisite financing. Petitioner subsequently gave this agency a deposit in the amount of $13,000, which was to be used as the agency's commission in the event the financing was obtained. On January 5, 1966, petitioner and Hotel Holding Company executed a "Memorandum Agreement," which was also described as an "interim agreement." This agreement stated that the parties had agreed on that date to transfer ownership of the Company to petitioner as soon as he was able to obtain the requisite financing. This agreement further provided, in part, as follows: 5. agrees to assume all taxes, assessments and operating expenses as of and henceforward from Jan. 1, 1966, all income to be derived from the operation of the Corporation and/or hotel henceforward from Jan. 1, 1966 and during the life of this interim agreement to accrue to the [petitioner] solely for the purpose of assuring the continuity of the operations of the Corporation and all its appertenance. 6. All terms of the heretoforementioned Option Agreement are reinstated except that final payment shall be in full and except for Special Clauses 21, 23, and 24, the life of this Interim Agreement *200 to be from this date forward, retroactive to January 1, 1966, until all titles have been searched and final financial arrangements completed to the satisfaction of both parties. 7. Both parties agree to expedite in every manner possible, to co-operate with all the means at their disposal and to provide whatever information, records and/or exhibits that may required by the Lender in order to conclude at the earliest possible date financial requirements essential to the final transfer of ownership by [the seller] to [petitioner]. Soon after the execution of this "Memorandum Agreement" in January of 1966 petitioner took over the operation and management of the hotel. After he had managed the hotel for several months, petitioner was informed that the would be unable to obtain the requisite financing he had previously anticipated. Petitioner thereupon abandoned the venture. For reasons not disclosed by the record herein, the finance agency refused to return the petitioner's $13,000 deposit. Petitioner "had to sue them in Federal Court to get the money back." In his income tax return for 1965 petitioner deducted $2,665 as a business expense for travel. This expense was incurred in connection *201 with his attempted acquisition of the Hotel Holding Company stock and in investigating and attempting to secure financing for the above hotel venture. Respondent disallowed this deduction in full. Prior to and during 1964 and 1965 petitioner wrote several books which were published. In 1963 one book was published by Philosophical Library, Inc., of New York City and petitioner reported beginning inventory of $2,682 and ending inventory of $2,532 for 1964 with reference to those books. His Profit (or Loss) From Business or Profession schedule (Schedule C) attached to his 1964 return reflected the sale of 25 books for that year with resulting gross receipts of $125. This was the only item of receipt reported on this Schedule C from petitioner's business or profession, 730 described thereon as "Legal, Author, Investment, etc." In Schedule C attached to petitioner's 1965 income tax return he again reported that his principal business activity was lawyer, author, investments, etc., and that his gross receipts for that year were $500. In 1965 another book, "Mirrors Of The Soul" by Kahlil Gibran, translated and edited by petitioner, was published by the Philosophical Library of New York and *202 the aforementioned gross receipts were derived from the sale of petitioner's literary works. In listing other business expenses on Schedule C for 1964, petitioner deducted $223.76 as a business expense for publicity. He incurred this expense to promote the sale of his books which were on the market at that time. Respondent disallowed this deduction in full. Many years prior to 1964 petitioner practiced law and maintained a law office in Youngstown, Ohio. Although he closed that office long before the years in issue, at the time of the trial petitioner still occasionally performed legal work. During the years in question petitioner owned one-third of the common stock of Arena Bowling Lanes, Inc., a corporation operating in Youngstown, Ohio. He was the vice president of the corporation in 1964, and secretary-treasurer in 1965. In its corporate income tax return for each of those years, the corporation reported compensation paid to the petitioner in the amount of $7,800. During the years in issue petitioner resided in a split-level house with his wife and three children. Petitioner set asid three of the rooms on the lower level exclusively for his own use. These rooms had an outside separate *203 entrance and contained a desk, a typewriter, chairs, bookshelves, and files. Much of the time petitioner used the room in which the desk was situated, and which had the private outside entrance, as a place to meet with tenants and to write his books. Most of his writing was historical in nature, and over the years he had accumulated a large collection of reference books. These reference books occupied much of the space in each of the three rooms. Two of the rooms contained only these books and a large collection of files relating to legal work which he had performed in past years and to an insurance business which he had previously operated. During the years in issue petitioner did not maintain an office outside of his home for his business activities. At times people would meet with the petitioner in his home office to pay rent or to transact other business regarding petitioner's rental properties. Petitioner also performed some services as an attorney and as an officer of Arena Bowling Lanes, Inc., during these years and used this room for such purposes. However, the lower level office space was never used for family purposes. Respondent also disallowed petitioner's deduction of *204 the following items claimed as "other business expenses" in 1964 and 1965: 1964
1965
Secretarial
$47.50
*
Cleaning
200.00
$200.00
Telephone
675.22
825.00
Utilities
*
330.00
Investigation
*
380.00
Stamps
25.00
*
At trial the respondent conceded that petitioners are entitled to the deductions claimed in 1964 for secretarial expenses of $47.50 and stamps of $25 and to the deduction of $380 claimed in 1965 for investigation. All of the other disallowed claimed expense deductions are undisputed as to year, amount and nature. The amounts claimed for cleaning and utilities were allocable to the three afore-mentioned rooms on the lower level of petitioner's residence, and represented a proportionate part of the total amount of such expenses incurred by petitioner in his residence. Petitioner incurred ordinary and necessary business expenses for utilities to the extent of $200 in 1965, and for cleaning to the extent of $150 in each of the years 1964 and 1965. There is no evidence of record that the claimed telephone expenses were incurred in connection with any business of the petitioner, or even that there was a telephone located *205 in the portion of petitioner's residence set aside and used by him for business purposes. The bulk of such expenses in 1965 related to petitioner's efforts to acquire the stock of Hotel Holding Company. Opinion The first issue which we shall consider is whether certain traveling expenses incurred by petitioner in 1965 constituted deductible business expenses under section 731 162. Petitioner incurred these expenses while attempting to acquire a hotel in Florida which he intended to convert into a "senior citizen home." Respondent contends that these expenses were not related to the petitioner's business of managing and leasing real property in which he had an interest. It is respondent's position that these traveling expenses were incurred by petitioner while investigating and attempting to establish a new trade or business. This Court has held that such preliminary expenses do not constitute deductible business expenses. ; . Petitioner has failed to carry his burden of proving that his traveling expenses were connected with his business of managing and leasing rental properties. At the trial he merely stated that *206 he intended to convert the hotel into a "senior citizen home." He did not offer any evidence to show what type of home he had in mind or how it would have related to his existing business. It is possible that petitioner merely intended to operate an apartment building for aged citizens. If petitioner had so informed the Court, then he would have been in a better position to argue that he did not embark upon a new trade or business since his existing business included the management of apartment buildings. On the other hand, the "senior citizen home" which petitioner intended to establish may well have provided its occupants with food, nursing care, and other services outside the realm of petitioner's existing business. Also since the travel was in connection with efforts to obtain financing it might well be that the expense thereof should properly be regarded as part of the acquisition cost of the stock petitioner was seeking to purchase, rather than a deductible business expense. We need not decide that question here, however, as we conclude that even if this expense is regarded as a business expense rather than a capital expenditure, petitioner has failed to establish any connection *207 between his 1965 business operation and his travel expenses that year; the presumption of correctness attaching to the respondent's determination has not been overcome as to this issue. Petitioner also appears to be arguing that he is entitled to deduct the traveling expenses in the taxable year 1965 as a loss under section 165. However, section 165(a) cleary states that only those losses which are sustained during the taxable year are deductible. It is very clear in the instant case that petitioner did not sustain a loss in 1965; petitioner began to operate the Angebilt Hotel in January 1966 and continued to do so for several months; he did not abandon his efforts to acquire the hotel until late in 1966 when he first learned that he would be unable to obtain the necessary financing. We therefore conclude and hold that the traveling expenses in issue herein are not deductible in 1965 either as an ordinary and necessary business expense under section 162 or as a loss under section 165. The next question with which we are presented is whether petitioner is entitled to deduct certain telephone expenses in the amount of $675.22 in 1964 and $825 in 1965 as ordinary and necessary business *208 expenses under section 162(a). The evidence of record pertaining to telephone expenses indicates only that some undetermined portion of the above amounts was incurred in connection with investigating and arranging for the purchase of the hotel in Florida. Since petitioner did not prove that the hotel venture was part of his existing trade or business, this portion of his telephone expenses is not deductible. With respect to the remainder of the telephone expenses claimed, petitioner has failed to produce any evidence whatsoever and has clearly failed to carry his burden of proof. We neither know what his total telephone expense was nor how it might be apportioned properly between business and nor-business use. We do not even know if petitioner had a telephone or telephone extension in his home office. We therefore hold that respondent's determination on this issue must be sustained. The next issue is whether petitioner is entitled to deduct certain expenses for cleaning and utilities attributable to three rooms in his residence as ordinary and necessary business expenses under section 162. Petitioner deducted $200 for cleaning expenses in each of the years 1964 and 1965, and $330 for *209 utilities in 1965. These amounts represented a proportionate part of the total amount of such expenses incurred by petitioner in his residence during each taxable year. It is the petitioner's position that the three rooms were used exclusively for business purposes and that they constituted his only business "office" during the taxable years. It appears that petitioner devoted a substantial portion of the time which he spent in his office to his rental and writing 732 activities. Respondent contends that petitioner has not shown that he was in the trade or business of writing. He relies on . In , affd. per curiam (C.A. 6, 1960), we held that writing would not qualify as a trade or business unless there was "some conscientious intent and effort to engage in and continue in the writing field for the purpose of producing income and a livelihood * * *." We also noted that "* * * it is clear that a person may be engaged in more than one trade or business, and writing need not be the sole activity of the taxpayer to qualify as a trade or business." (). The Purdy case, supra, is clearly distinguishable *210 on its facts and not controlling here. Petitioner wrote several books which were published prior to 1964, and continued his writing activities during 1964 and 1965. In 1963 petitioner's book "One White Race Or Following The Gods" was published in New York and in 1965 the book "Mirrors Of The Soul" by Kahlil Gibran, edited and translated by petitioner was also copyrighted and published in New York. We believe petitioner's testimony that he reasonably hoped and expected to make a profit from his writing. In his opening statement at trial and in his testimony as well petitioner repeatedly stated that his writing efforts were not a hobby but were serious and a business which respondent had recognized as such for several years. At no time were these statements challenged by respondent until opening briefs were filed. As our findings reflect, petitioner realized income from the sale of his books in both years before us. Although the record is not entirely clear it appears that it might well be true that all petitioner's income from his business or profession reported on separate Schedule C was from the sale of his books. In 1964, the year following publication of "One White Race," petitioner's *211 income from the sale of that book was $125 and in 1965 his gross receipts on Schedule C were $500 which we have found was also from book sales. [2] At trial when the Court inquired about this matter counsel for respondent stated that there was no dispute but that the amounts reported in the returns from book sales were correct. As testified by petitioner, respondent has accepted the receipts from book sales as income from business but has denied petitioner the deductions he claimed as expenses thereof. On the entire record we conclude and hold that petitioner was a bona fide author making a conscientious effort to engage in the business of writing books for sale for profit. The fact that the activity was conducted at a loss in the years before us does not preclude its being considered a business. [3] *212 Petitioner testified that he spent money to advertise his books that were on the market and there is no dispute as to the amount of this expenditure, $223.76, which respondent disallowed for 1964. In the light of our conclusion as to petitioner's business as a writer we conclude that this deduction should be allowed as a reasonable and necessary business expense. Petitioner had an inventory of several thousand books to be sold; the publicity or advertising expense was directly connected with that business effort and should have been allowed. Since petitioner has convinced us that he was in the business of writing and reasonably expected to profit therefrom, he is entitled to deduct the expenses of maintaining the three aforementioned rooms to the extent that he used them for his writing activities. Petitioner has established that he did use his home "office" to a large extent for business purposes, and that he did not maintain an office outside of his home for any of his business activities during the years in issue. However, he has *213 failed to establish that the space set aside for business purposes was exclusively used for businesses carried on by petitioner in the years at issue. He therefore has failed to prove that he is entitled to deduct the entire amount of claimed expenses in dispute as ordinary and necessary business expenses. Applying the rule of (C.A. 2, 1930), and bearing heavily against the 733 petitioner whose inexactitude is of his own making, we conclude and hold that petitioner is entitled to deduct $150 for cleaning expenses in each of the years 1964 and 1965, and $200 for utilities in 1965. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
*. The record does not reveal either the cost of this property or the year in which it was acquired.↩
*. Petitioner did not claim a deduction for these items in the indicated year.↩
2. On brief respondent mentions a legal fee received by petitioner in 1965 but the record itself is completely silent about any such fee and we have found on the evidence before us that petitioner's 1965 receipts were from book sales. ↩
3. At time of trial in 1969, petitioner estimated that two of his books had generated gross receipts in the amount of $250,000, but stated that he, himself, had not yet received any money from the sale of these books, and that he might have to bring legal action to collect what was due him.